UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RALSTON BROWN,<br>  *Plaintiff*,<br><br>  v.<br><br>SUPERIOR FOR THE CONNECTICUT<br>DEPARTMENT OF STATE POLICE *et al.*<br>  *Defendants*. | No. 3:22-cv-01270 (JAM) |

**ORDER GRANTING MOTION TO DISMISS
AND DENYING MOTION FOR JUDICIAL ESTOPPEL**

  The plaintiff Ralston Brown was convicted in 1993 in a Connecticut state court for conspiring to commit a third-degree sexual assault. His conviction later required him to comply with Connecticut's sex offender registration law.

  Brown has filed this action against certain officers of the Connecticut State Police that enforce the registration law. He principally claims that by seeking to enforce the law against him they have violated his federal constitutional rights to due process and to be free from unreasonable seizure.

  I conclude that Brown has not plausibly alleged that any of the defendant officers have violated his constitutional rights. Accordingly, I will grant the defendants' motion to dismiss his federal law claims and I will decline to exercise supplemental jurisdiction over his state law claims. I will also deny Brown's motion for judicial estoppel.

**BACKGROUND**

  Brown has filed a *pro se* amended complaint against three named defendants of the Connecticut State Police.[1] I assume for present purposes that the following facts are true as alleged in the amended complaint.

---

[1] Doc. #22-1 at 1. The named defendants are "Superior for the Connecticut Department of State Police," "Police

1

In October 1993, Brown agreed to enter an *Alford* plea in Connecticut state court to a charge of conspiracy to engage in third-degree sexual assault.[2] He was 17 years old at the time, and the victim was 16 years old.[3] Brown's attorney allegedly assured him that by accepting an *Alford* plea he was not pleading guilty to the offense.[4] Brown's plea agreement called for time served plus three years of probation.[5] The State of Connecticut allegedly violated the plea agreement by detaining him for two more months until December 1993.[6] The victim eventually recanted but Brown's attorney told him it was too late to seek relief because Brown had already entered into a plea agreement.[7]

When Brown entered his guilty plea in 1993, Connecticut did not yet have a sex offender registration law, commonly known as a "Megan's law."[8] But Connecticut soon enacted laws to require the registration of sex offenders. *See State v. Kelly*, 256 Conn. 23, 90 (2001) (noting initial Megan's Law enactments in 1994 and 1995 and amendment in 1997); An Act Concerning the Registration of Sexual Offenders, 1998 Conn. Legis. Serv. P.A. 98-111 (S.S.B. 65) (as codified at Conn. Gen. Stat. § 54-250 *et seq.*). Connecticut made its law retroactive to any person—including Brown—who was convicted for a sexually violent offense and who was released into the community after October 1, 1988. *See ibid.*, § 3 (codified at Conn. Gen. Stat. §

---

Officer Col. Mellekas," and "Police Officer Sag. Matthew Garcia."
[2] *Id.* at 5 (¶ 23). Connecticut's third-degree sexual assault law provides in relevant part that "[a] person is guilty of sexual assault in the third degree when such person (1) compels another person to submit to sexual contact (A) by the use of force against such other person or a third person, or (B) by the threat of use of force against such other person or against a third person, which reasonably causes such other person to fear physical injury to himself or herself or a third person." Conn. Gen. Stat. § 53a-72a(a)(1). Connecticut law separately makes it unlawful to engage in a conspiracy to commit a crime such as third-degree sexual assault. *See* Conn. Gen. Stat. § 53a-48(a).
[3] Doc. #22 at 4 (¶ 17).
[4] *Id.* at 5 (¶ 21).
[5] *Id.* at 5 (¶ 23).
[6] *Id.* at 5 (¶ 25).
[7] *Id.* at 5 (¶ 26).
[8] *Id.* at 5 (¶ 22)

2

54-252(a)).[9] And for persons who have been convicted of a sexually violent offense, Connecticut imposes a lifetime registration requirement. *See* Conn. Gen. Stat. § 54-252(a).

Brown alleges that the Connecticut State Police required him to register as a sex offender in October 1998.[10] He complains that the police did not afford him notice or an opportunity to be heard on the issue of his guilt or current dangerousness before mandating that he register as a sex offender.[11] He also claims that he told the police in October 1998 and a number of times since then that they were violating his due process rights by requiring him to register as a sex offender.[12]

Brown further claims that his *Alford* plea agreement allowed him to maintain his innocence so that he could not be required by the police to register as a sex offender.[13] According to Brown, he could not be subject to a condition, such as a sex offender registration requirement, that was not a part of the plea agreement.[14] Moreover, Brown claims that the defendants "do not have jurisdiction to mandate the plaintiff [comply with the] registration requirement, because the defendants are without an intelligent or guilty plea from the plaintiff."[15]

Brown also alleges that on October 12, 2022, the defendants issued an arrest warrant and wrongfully caused him to be arrested for failing to comply with the registration law.[16] Although

---

[9] The Connecticut registration law's definition of a "sexually violent offense" includes conspiracy to engage in third-degree sexual assault. *See* Conn. Gen. Stat. § 54-250(11)(B) (citing Conn. Gen. Stat. §§ 53a-48, § 53a-72a). Although the definition of a sexually violent offense includes an exception for a third-degree sexual assault involving a person who is mentally incapacitated or impaired, Brown does not claim that his conviction falls within this exception.
[10] Doc. #22 at 6 (¶ 27).
[11] *Id.* at 6 (¶ 30).
[12] *Id.* at 10 (¶ 51).
[13] *Id.* at 6 (¶ 29); *see also id.* at 14 (¶ 81).
[14] *Id.* at 8 (¶ 40); *see also id.* at 14 (¶ 80).
[15] *Id.* at 12 (¶ 64).
[16] *Id.* at 10 (¶ 54).

3

the complaint alleges that the charge is still pending, Brown has since filed a record reflecting that the charge was dismissed in June 2023.[17]

Finally, Brown asserts that the defendants wrote him a letter on February 2, 2023, to advise that they intended to issue another arrest warrant.[18] Brown has attached to the complaint a copy of the letter on State Police letterhead advising that he must submit by February 16, 2023, to the retaking of his photograph as required under Connecticut's sex offender registration law.[19]

The amended complaint alleges violations of the U.S. Constitution and state law. It includes claims pursuant to 42 U.S.C. § 1983 for violation of Brown's rights under the Fourth and Fourteenth Amendments, specifically for denial of due process and false imprisonment.[20] It also includes state law claims for harassment, negligence, and breach of contract.[21] The complaint seeks money damages, costs, and "any other relief this Court deems appropriate."[22]

## DISCUSSION

For purposes of a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint may not survive unless it alleges facts that, taken as true, give rise to plausible grounds to sustain a plaintiff's claims for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Kim v. Kimm*, 884 F.3d 98, 102-03 (2d Cir. 2018). If the plaintiff is appearing *pro se*, a court must liberally construe the complaint and interpret it to raise the strongest grounds for relief that its allegations suggest. *See Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (*per curiam*). Still, even a *pro se* complaint may not survive dismissal if its factual allegations do not establish at least plausible grounds for granting relief. *Ibid.*

---

[17] *Id.* at 12 (¶ 67); Doc. #35 at 24; Doc. #35-1 (Ex. A).
[18] Doc. #22 at 12 (¶ 66).
[19] *Id.* at 17 (Ex. D).
[20] *Id.* at 7-11 (Counts One to Four). It is unclear whether the claims of false imprisonment are under federal law, state law, or both.
[21] *Id.* at 12-14 (Counts Five to Seven).
[22] *Id.* at 14-15.

*Due process*

The Fourteenth Amendment to the United States Constitution provides that a State shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause of the Fourteenth Amendment protects both a right to "procedural" due process as well as a right to "substantive" due process. *See, e.g.*, *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998). Procedural due process generally requires a fair process such as notice and a hearing if the government deprives a person of their life, liberty, or property. *See Ace Partners, LLC v. Town of E. Hartford*, 883 F.3d 190, 195 (2d Cir. 2018). By contrast, substantive due process constrains the government from violating fundamental constitutional rights or otherwise engaging in conscience-shocking conduct that is arbitrary and outrageous and without any legitimate governmental objective. *See Matzell v. Annucci*, 64 F.4th 425, 436 (2d Cir. 2023); *Goe v. Zucker*, 43 F.4th 19, 30 (2d Cir. 2022).

Brown alleges that his right to procedural due process entitled him to a hearing regarding his future dangerousness before he could be subject to the requirements of Connecticut's registration law. But the Supreme Court rejected this same argument in *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1 (2003). It noted that "Connecticut … has decided that the registry requirement shall be based on the fact of previous conviction, not the fact of current dangerousness," that dangerousness "is of no consequence under Connecticut's Megan's Law," and that the Due Process Clause does not require a hearing as to a factual matter such as dangerousness that is not "relevant under the statutory scheme." *Id.* at 4, 7, 8. The Supreme Court's decision plainly forecloses Brown's claim that he had a right to a hearing to evaluate his future dangerousness.

Nor did Brown have a right to a hearing to evaluate whether he was convicted of a crime that made him subject to Connecticut's registration law. As an initial matter, Brown does not suggest that a conviction for conspiracy to engage in a third-degree sexual assault falls outside the scope of the law. Instead, he alleges, in essence, that he was not "convicted" at all because he entered a guilty plea pursuant to the *Alford* doctrine.

The *Alford* doctrine allows a criminal defendant to enter a guilty plea even if he does not admit his guilt but wishes to plead guilty to avoid the risk of proceeding to trial. *See North Carolina v. Alford*, 400 U.S. 25, 37 (1971) (upholding acceptance of a guilty plea accompanied by a refusal to admit the crime). As the Second Circuit has explained, "under Connecticut procedure, acceptance of an *Alford* plea represents a conclusion on the part of the court and the defendant himself that the evidence of guilt is so strong that a jury is likely to find the defendant guilty beyond a reasonable doubt." *United States v. Glenn*, 744 F.3d 845, 848 (2d Cir. 2014) (*per curiam*). "As such a conclusion is constitutionally sufficient to permit entry of a judgment of guilt, a later court does not abuse its discretion by relying on such a plea to determine by a preponderance of the evidence that the defendant committed the charged offense." *Ibid.* Thus, "an *Alford* plea results in the defendant's conviction on the crime at issue to the same extent as any other guilty plea." *Burrell v. United States*, 384 F.3d 22, 28 (2d Cir. 2004).

Accordingly, the fact that Brown entered an *Alford* guilty plea does not mean that he was not convicted. And because his conviction was for a crime that is indisputably within the scope of the law, procedural due process did not require that he receive a hearing because there was nothing to have a hearing about. *See Doe v. Cuomo*, 755 F.3d 105, 113 (2d Cir. 2014) (rejecting procedural due process challenge to application of New York sex offender registration law where "there was no fact that would require a protective *procedure* to determine").

Nor does Brown allege a plausible claim for violation of his right to substantive due process. To begin, he does not allege facts to show that the registration law shocks the conscience by means of being arbitrary, outrageous, or lacking any rationally legitimate governmental purpose. *See Goe*, 43 F.4th at 30. To the contrary, as the Connecticut Supreme Court has noted, "the intent of [Connecticut's registration law] was to alert the public by identifying potential sexual offender recidivists when necessary for public safety." *State v. Waterman*, 264 Conn. 484, 490 (2003). "The seriousness of the harm that sex offenders' actions cause to society and the perception, supported by some data, that such offenders have a greater probability of recidivism than other offenders have recently combined to prompt the enactment of numerous laws across the country directed specifically toward persons convicted of crimes involving sexual conduct." *Doe v. Pataki*, 120 F.3d 1263, 1266 (2d Cir. 1997).

The substantive due process clause also limits intrusions on the exercise of fundamental rights such as a person's right to privacy. *See Hancock v. Cnty. of Rensselaer*, 882 F.3d 58, 64-68 (2d Cir. 2018). But Brown makes no argument here about how the registration law violates his fundamental rights or his privacy. The Second Circuit has rejected a substantive due process privacy challenge to New York's sex offender registration law. *See Cuomo*, 755 F.3d at 114 ("Given the combination of the nature of the information released (consisting in large part of matters of public record) and the State's strong interest in releasing it, Doe has not supported a claim for the violation of any constitutional right to privacy.").

Multiple federal appellate courts have rejected substantive due process challenges to sex offender registration laws. *See, e.g., Doe v. Settle*, 24 F.4th 932, 953 (4th Cir. 2022); *Millard v. Camper*, 971 F.3d 1174, 1185-86 (10th Cir. 2020) *Doe v. Moore*, 410 F.3d 1337, 1342-46 (11th Cir. 2005); *Doe v. Tandeske*, 361 F.3d 594, 596-97 (9th Cir. 2004) (*per curiam*).

7

In short, Brown has not alleged plausible grounds for relief under the procedural or substantive components of the Due Process Clause. Accordingly, I will dismiss his claims for relief under the Due Process Clause.

### *Fourth Amendment*

Brown claims that he was falsely imprisoned by the defendants in violation of his rights under the Fourth Amendment. I assume that this claim stems from Brown's allegation that the defendants issued an arrest warrant and caused him to be arrested in October 2022 for failure to comply with the requirements of the Connecticut registration law.

The Fourth Amendment protects the right to be free from unreasonable search and seizure. See U.S. CONST. amend. IV. A false arrest or false imprisonment may constitute the basis for a claim that a plaintiff has been unreasonably seized in violation of the Fourth Amendment. *See Russo v. City of Bridgeport*, 479 F.3d 196, 203-204 (2d Cir. 2007). But such a claim requires that the plaintiff allege facts to show that he was arrested or imprisoned without probable cause. *Ibid.*

Brown does not allege facts to show that the defendants lacked probable cause for his arrest. He does not allege, for example, that he was arrested for failing to comply with a particular provision of the registration law that he had in fact obeyed. Instead, his claim for false imprisonment rises or falls on his argument that he should not have been subject to the registration requirement in the first place. But—as discussed above—Brown is subject to the registration law.

In short, Brown has not alleged facts to show that the defendants lacked probable cause to arrest him for failure to comply with the registration law. Accordingly, I will dismiss his Fourth Amendment claim for false imprisonment.

*Ex Post Facto*

If I afford a liberal reading to the complaint, Brown's complaint may be interpreted to allege that the retroactive application to him of Connecticut's registration law violates the Ex Post Facto Clause. The Constitution provides, "No ... ex post facto Law shall be passed." U.S. CONST. art. I, § 9, cl. 3. "To violate the Ex Post Facto Clause a law must be retrospective—that is, it must apply to events occurring before its enactment—and it must disadvantage the offender affected by it, by altering the definition of criminal conduct or increasing the punishment for the crime." *United States Sec. & Exch. Comm'n v. Ahmed*, 72 F.4th 379, 401 (2d Cir. 2023). In order to evaluate a claim that a retroactive law violates the Ex Post Facto Clause, a court must consider whether the law has a punitive purpose as well as a punitive effect. *Ibid.*

The case law in this area does not favor Brown. In *Smith v. Doe*, 538 U.S. 84 (2003), the Supreme Court rejected an Ex Post Facto Clause challenge to Alaska's sex offender registration law on the ground that the law was regulatory and not punitive in purpose or effect. The Second Circuit has similarly rejected an Ex Post Facto challenge to New York's sex offender registration law. *See Cuomo*, 755 F.3d at 109-112.

The Second Circuit has yet to decide the issue with respect to the Connecticut law, but the Connecticut Supreme Court has ruled that Connecticut's "statutory sex offender registration requirements are remedial and not punitive in nature." *Goguen v. Comm'r. of Correction*, 341 Conn. 508, 530 (2021); *see also Kelly*, 256 Conn. at 90-94 (rejecting Ex Post Facto challenge to 1994, 1995, and 1997 versions of Connecticut registration law).

Federal and state trial court decisions have also rejected Ex Post Facto Clause challenges to Connecticut's registration law. *See Doe v. Lee*, 132 F. Supp. 2d 57, 66-70 (D. Conn.) (rejecting Ex Post Facto challenge to 1998 and 1999 versions of law), *aff'd on other grounds sub*

9

*nom. Doe v. Dep't. of Pub. Safety ex rel. Lee*, 271 F.3d 38 (2d Cir. 2001), *rev'd on other grounds sub nom. Conn. Dep't. of Pub. v. Doe*, 538 U.S. 1 (2003); *Cornelio v. Connecticut*, 2020 WL 7043268, at *7-8 (D. Conn. 2020) (rejecting Ex Post Facto challenge to 2007 amendment to law requiring that sex offenders disclose email addresses and Internet identifiers), *aff'd in part on other grounds, rev'd in part and remanded on other grounds*, 32 F.4th 160 (2d Cir. 2022); *see also State v. Dickerson,* 2013 WL 2451243, at *12-15 (Conn. Sup. Ct. 2013) (rejecting Ex Post Facto challenge to the lifetime registration requirement of Connecticut's registration law), *aff'd on other grounds*, 151 Conn. App. 658 (2014).[23]

All in all, the facts as alleged in Brown's complaint do not plausibly support a claim that Connecticut's registration law violates the Ex Post Facto Clause. Accordingly, to the extent that Brown's complaint may be liberally interpreted to allege a violation of the Ex Post Facto Clause, I will dismiss that claim.[24]

### *Constitutional challenge to 1993 guilty plea, conviction, and sentence*

Much of Brown's amended complaint appears to challenge the validity of his guilty plea more than 30 years ago. For example, he alleges that he was misadvised by his attorney that an *Alford* plea was not a conviction, that the State required him to serve more time in prison than his plea agreement allowed, and that he was actually innocent because the victim recanted. Even if

---

[23] In *Prynne v. Settle*, 848 F. App'x 93, 101-03 (4th Cir. 2021), the Fourth Circuit ruled that a complaint had plausibly alleged that Virginia's sex offender registration law violated the Ex Post Facto Clause because of its punitive effect. But the challenge there was to particular aspects of Virginia's law, and here Brown has not explicitly alleged a violation of the Ex Post Facto Clause, much less identified any particular aspects of Connecticut's law that are impermissibly punitive in purpose or effect as applied to him.

[24] One provision of Connecticut's sex offender registration law requires the disclosure of email addresses, instant message addresses, and other Internet identifiers. *See* Conn. Gen. Stat. § 54-251(a). I have recently ruled that this provision violates the First Amendment as applied to a different plaintiff. *See generally Cornelio v. Connecticut*, -- F. Supp. 3d --, 2023 WL 5979996 (D. Conn. 2023). Although my ruling declined to grant relief from the Internet disclosure requirement to all other sex offenders, *see id.* at *12-13, I would be surprised if Connecticut continues to seek to enforce the Internet disclosure provision of the law against other sex offenders. In any event, because the amended complaint does not cite this provision or complain about restrictions on speech, even a liberal interpretation of the complaint does not suggest that Brown seeks to raise a First Amendment free speech claim.

there is merit to any of these arguments, they do not warrant a grant of relief against the defendants in this action because Brown does not allege that any of the three defendants from the Connecticut State Police had anything to do with his original prosecution and conviction in 1993. A defendant cannot be liable to a plaintiff under 42 U.S.C. § 1983 absent a showing that the defendant was personally involved with the alleged violation of the plaintiff's constitutional rights. *See Kravitz v. Purcell*, 87 F.4th 111, 129 (2d Cir. 2023).

Nor may Brown predicate his claims of constitutional violations in this case on any baseline assumption that his 1993 conviction was invalid. The Supreme Court has made clear that if a ruling in favor of a plaintiff in a § 1983 action would necessarily imply the invalidity of a prior conviction or sentence, then the plaintiff must first prove that the conviction or sentence has been invalidated before he can seek to recover damages for a constitutional violation. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *see also Kupsky v. Outagamie Cnty.*, 747 F. App'x 431, 432 (7th Cir. 2019) (applying *Heck v. Humphrey* to preclude § 1983 claim against judge who allegedly failed to inform the plaintiff when he pleaded guilty that he would be subject to sex offender registration).

As I advised Brown at oral argument and at the time that I dismissed his initial complaint, if he believes that his 1993 state court conviction is constitutionally invalid, then he should first seek relief in state court—rather than federal court—to vacate his conviction.[25] *See State v. Pentland*, 296 Conn. 305, 315 (2010) (rejecting argument by defendant convicted of a crime that qualified for sex offender registration that he could not be required to register and noting that, to the extent that the defendant contended that his *Alford* guilty plea was invalid because he was misled about the sex offender registration requirement, then "his remedy is to challenge the

---

[25] Doc. #20.

conviction to which the obligation of [the sex offender registration] statute attaches" rather than to "seek[] relief from the registration requirement itself").

In short, Brown has not alleged plausible grounds for relief against any of the named defendants with respect to his challenges to the constitutionality of his 1993 criminal conviction. Accordingly, I will dismiss his constitutional claims insofar as they challenge his 1993 conviction.

### *State law claims*

Brown alleges that the defendants violated state law by means of false imprisonment, harassment, negligence, and breach of contract. Because I have dismissed all of Brown's federal law claims, I decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over these state law claims. It is well settled that when a federal court dismisses all federal claims in the early stages of a case, the court should ordinarily decline to exercise supplemental jurisdiction over the remaining state law claims for which there is no original federal jurisdiction. *See Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 325 (2d Cir. 2021). Accordingly, I will dismiss Brown's state law claims without prejudice.

### *Judicial estoppel*

Brown has also filed a motion for judicial estoppel.[26] "'The equitable doctrine of judicial estoppel provides that, where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'" *United States v. Swartz Fam. Tr.*, 67 F.4th 505, 519 (2d Cir. 2023) (quoting *Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 147 (2d Cir.

---

[26] Doc. #31.

2005)). "The doctrine applies if '1) a party's later position is clearly inconsistent with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel.'" *Ibid.* (quoting *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010)). Even if all these requirements are met, "judicial estoppel is not a mechanical rule," and so "a court must inquire into whether the particular factual circumstances of a case 'tip the balance of equities in favor' of doing so." *Clark v. AII Acqusition, LLC*, 886 F.3d 261, 266-67 (2d Cir. 2018) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001)).

Brown contends that the recent dismissal of the state court charge against him estops the defendants in this action from defending the constitutionality of the registration requirement here.[27] But the defendants in this action were not personally parties to the state court criminal case against Brown, so they could not have taken an inconsistent position in the prior state court proceeding, as judicial estoppel requires. Nor has Brown shown that the dismissal of the charge against him amounted to a concession that Brown was not within the scope of persons who may be subject to the registration law. More generally, the fact that the prosecution may dismiss a charge against a criminal defendant does not mean that any police officers involved in the case are judicially estopped from defending against a claim of civil liability.

Brown's motion also objects to the defendants' mistaken representation that the Connecticut General Assembly had recently amended the registration law so that it would no longer apply to Brown—a misstatement that the defendants promptly corrected by means of supplemental filing.[28] But Brown does not show that the defendant's mistake afforded them an unfair advantage in this case or has prejudiced him.

---

[27] *Id.* at 1.
[28] Doc. #27-1 at 14 n.7; Doc. #28.

In short, Brown has not shown any grounds for judicial estoppel. Accordingly, I will deny his motion for judicial estoppel.

## CONCLUSION

For the reasons stated above, the Court GRANTS the defendants' motion to dismiss (Doc. #27) and DENIES the plaintiff's motion for judicial estoppel (Doc. #31). Because Brown has already been afforded an opportunity to file an amended complaint and because it does not appear that he could allege further facts that would state plausible grounds for relief under the Due Process Clause, the Fourth Amendment, or the Ex Post Facto Clause, the Court dismisses these federal law claims with prejudice. The Court dismisses the state law claims without prejudice to their timely re-filing in state court.

The Clerk of the Court shall close this case.

It is so ordered.

Dated at New Haven this 25th day of March 2024.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge